UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In Re:

    Jeffrey Sharak,                                Case No.: 09-62928
                                                                               Chapter 13

                                Debtor(s).

---

APPEARANCES:

Selbach Law Firm, PLLC                               *James F. Selbach, Esq.*
*Counsel for Debtor*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Rosicki, Rosicki & Associates, P.C.                 *Barbara Dunleavy, Esq.*
*Counsel for Deutsche Bank*
51 East Bethpage Road
Plainview, New York 11803

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

*I.*    *Introduction*

      Before the Court is a motion by Debtor Jeffrey Sharak ("Debtor") against Bayview Loan Servicing, LLC ("Bayview") filed on November 7, 2016 (the "Motion," ECF No. 65), wherein Debtor seeks sanctions against Bayview pursuant to 11 U.S.C. § 105 for civil contempt based on its alleged violation of the discharge injunction provided by 11 U.S.C. § 524(a)(2).[1] Deutsche Bank National Trust Company, as Trustee for Registered Holders of VCM Trust Series 2009-2 ("Deutsche Bank"), filed opposition to the Motion on November 23, 2016 (the "Opposition," ECF No. 71), as the mortgagee of the underlying debt serviced by Bayview. The Court first heard the

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2012).

matter on its regularly scheduled Binghamton motion calendar on December 1, 2016. Based on the parties' oral arguments, the Court adjourned the matter and provided the parties with an opportunity to submit limited memoranda. On January 6, 2017, Debtor filed his Memorandum of Law. (ECF No. 72.) On January 19, 2017, Deutsche Bank filed its Memorandum of Law on behalf of Bayview. (ECF No. 73.) On January 26, 2017, the Court reconvened the hearing and, following oral argument, took the matter under advisement. Based upon the record, oral argument, and the submissions of counsel, the Court makes the following findings of facts and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.[2]

## II.     *Jurisdiction*

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1), and (b)(2)(A).

## III.    *Facts*

The material facts of this case are undisputed and straightforward. The following facts are drawn from the parties' submissions and the Court's docket.

Deutsche Bank is the current holder of a Note and Mortgage, dated October 9, 1998, given by Debtor in the original principal amount of $33,600.00 to FEC Mortgage Corporation ("FEC"), pledging his former residence and real property known as 33 Wilson Street, Binghamton, New York 13905 (the "Real Property") as security for the indebtedness (the "Mortgage Debt"). On November 20, 1998, FEC assigned the Note and Mortgage to Delta Funding Corporation ("Delta"). On June 19, 2003, Delta assigned the Note and Mortgage to Wells Fargo Bank Minnesota, N.A. ("Wells Fargo"). Finally, on October 28, 2010, Wells Fargo assigned the Note and Mortgage to Deutsche Bank. At some point, Debtor defaulted on his obligation to make regular

---

[2] Unless otherwise indicated, all rule references are to the Federal Rules of Bankruptcy Procedure.

contractual payments under the Note and Mortgage and a foreclosure action was commenced in the Supreme Court for the State of New York, Broome County, on or about August 30, 2007.

Debtor filed a voluntary petition for chapter 13 relief with the Clerk of this Court on October 16, 2009. In his Chapter 13 Plan filed on the same date (the "Plan," ECF No. 2), Debtor provided for the repayment of the pre-petition arrears on the Mortgage Debt. On February 11, 2010, the Court issued an Order of Confirmation with respect to Debtor's Plan (the "Confirmation Order," ECF No. 17).

On August 4, 2010, Acqura Loan Services ("Acqura"), as servicer for Deutsche Bank, filed Proof of Claim Number 10 (the "Mortgage Claim"), which it subsequently amended on November 17, 2010, showing a total secured claim due in the amount of $51,528.85 and an arrearage due in the amount of $14,354.15. Acqura transferred the Mortgage Claim to Home Servicing, LLC ("Home Servicing") on or about May 23, 2010. (ECF No. 23.) Home Servicing subsequently transferred the Mortgage Claim to Bayview on or about May 23, 2012. (ECF No. 40.)

Debtor defaulted post-petition on the Mortgage Debt and, on May 23, 2013, Deutsche Bank filed a Motion for Relief from the Automatic Stay (the "Stay Relief Motion," ECF No. 31). Debtor did not oppose the Stay Relief Motion and the Court granted the same by Order issued July 12, 2013. (ECF No. 39.) On August 5, 2014, Debtor filed a Modified Chapter 13 Plan (the "Amended Plan," ECF No. 44) and a motion to modify his Plan pursuant to § 1329 to surrender the Real Property, excuse missed payments under the Plan, and resume monthly plan payments to the Trustee (the "Motion to Modify," ECF No. 45). The Court's records show that the Motion to Modify was electronically received by counsel for Deutsche Bank, Acqura, and Bayview. On November 18, 2014, the Court issued an Order granting the Motion to Modify (ECF No. 51), which was also electronically noticed to counsel for all parties. On April 10, 2015, the Court issued

an Order Discharging Debtor(s) After Completion of Chapter 13 Plan (the "Discharge Order," ECF No. 60). As set forth in the Bankruptcy Noticing Center's Certification of Notice filed on April 12, 2015 (ECF No. 61), both Deutsche Bank and Bayview were electronically served with the Discharge Order on April 12, 2015.

On November 7, 2016, Debtor filed an ex parte motion to reopen his case (ECF No. 63), which the Court granted by Order issued November 7, 2016. (ECF No. 64.) Debtor then filed the instant Motion, with the following attachments:

(a) An undated Mortgage Statement that shows a payment due date of 12/09/15, and a total amount due of $73,927.54 (the "Undated 2015 Statement"). Under the heading titled "Important Messages," it informs Debtor that his loan payment in the amount of $629.60 remains unpaid, causing a late charge in the amount of $6.10 to be assessed to his account. Under the heading titled "Delinquency Notice," it informs Debtor that failure to bring his loan current may result in fees and foreclosure and, in bold letters, stated: "**Total: $73,927.54 due. You must pay this amount to bring your loan current.**" The bottom of the 2015 Statement contains a detachable payment coupon.

(b) A Mortgage Statement dated December 24, 2015, which shows a payment due date of 01/09/16, and a total amount due of $74,563.24 (the "December 24 Statement"). The December Statement contains the same information and notices as the Undated 2015 Statement, but in fine print it also includes the following language: "To the extent that your obligation has been discharged or is subject to an automatic stay in bankruptcy this notice is for information purposes only and does not constitute a demand for payment or any attempt to collect such obligation."

(c) A Mortgage Statement dated February 24, 2016, which shows a payment due date of 03/09/16, and a total amount due of $75,819.17. In all other respects, it is identical to the December 24 Statement.

(d) A Mortgage Statement dated March 24, 2016, which shows a payment due date of 04/09/16, and a total amount due of $76,433.60. In all other respects, it is identical to the December 24 Statement.

(e) A Mortgage Statement dated April 25, 2016, which shows a payment due date of 05/09/16, and a total amount due of $77,047.43. In all other respects, it is identical to the December 24 Statement.

(f) An undated Mortgage Statement that shows a payment due date of 06/09/16, and a total amount due of $77,661.56. In all other respects, it is identical to the Undated 2015 Statement.

IV.   *Arguments*

As previously mentioned, the material facts in this case are largely undisputed. At oral argument on January 26, 2017, Debtor agreed that the Discharge Order does not impair Deutsche Bank's lien on the Real Property. Thus, the only disputed legal question is whether Debtors' personal liability on the Mortgage Debt was discharged. If so, the factual question is whether the Mortgage Statements from Bayview constitute a willful violation of the discharge injunction.

Deutsche Bank raises five arguments in opposition to the Motion: (1) the Motion is procedurally infirm because Debtor did not comply with Rule 9011(c)(1)(A); (2) § 1322(b)(2) prohibits discharge of personal liability for debts secured by a principal residence; (3) nothing in the Bankruptcy Code and/or Rules require a secured creditor to accept surrender of property; (4) Debtor's personal liability for the Mortgage Debt was not discharged pursuant to § 1328(a) because the Mortgage Claim was not provided for under Debtor's Amended Plan; and (5) neither Deutsche Bank nor Bayview have engaged in willful conduct sufficient to warrant sanctions because they are required by non-bankruptcy federal law, namely the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617 (2012), to send periodic statements to Debtor until title to the Real Property passes from Debtor to Deutsche Bank or a third-party.

V.   *Discussion*

The Court is bewildered by Deutsche Bank's first, second, and third arguments in the context of the present dispute and will address them before turning to the dispositive law and Deutsche Bank's two remaining arguments. As to Deutsche Bank's first argument, Rule 9011(c)(1)(A) is inapplicable to the present matter. A motion to enforce the discharge injunction

under §§ 105(a) and 524(a)(2) is a stand-alone contempt proceeding. Debtor is not seeking sanctions against Bayview for a violation of Rule 9011 for case-related conduct, but rather is seeking redress for Bayview's alleged civil contempt of the Court's Discharge Order and permanent discharge injunction. Further, Debtor complied with the service requirements of Local Bankruptcy Rule 9013-1(e) and Rules 7004(b)(3) and 9014(b), as evidenced by Debtor's Certificate of Service filed on November 7, 2016. (ECF No. 67.) Accordingly, the Motion is properly before the Court.

As to Deutsche Bank's second argument, § 1322(b)(2) prohibits modification of a fundamental aspect of a residential mortgage creditor's secured claim secured only by the debtor's principal residence.  11 U.S.C. § 1322(b)(2) (a chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's residence . . . .*") (emphasis added). Deutsche Bank does not contend that either Debtor's Plan or Amended Plan impermissibly modified its contract rights, but rather that § 1322(b)(2) somehow prohibits discharge of Debtor's personal liability for the Mortgage Debt.  In reaching this conclusion, Deutsche Bank reads too much into § 1322(b)(2).  As one court stated, "§ 1322(b)(2)'s protections do not place mortgage lenders outside the court's purview." *In re Adams*, No. 5:10-CV-340-BR, 2011 U.S. Dist. LEXIS 158090, at *7-8 (E.D.N.C. Jan. 24, 2011) (Notwithstanding § 1322(b)(2)'s protection of a mortgage lender's substantive contract rights, a mortgage lender must exercise those contract rights in the manner allowed by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and court orders.) (citing *In re Cano*, 410 B.R. 506, 21 (Bankr. S.D. Tex. 2009)).  Here, § 1322(b)(2) is inapplicable and irrelevant to the issue of Debtor's personal liability. Therefore, Deutsche Bank cannot use it as a defense for an alleged discharge injunction violation.

As to Deutsche Bank's third argument, in the first instance, the Court notes that Debtor has not attempted to force Deutsche Bank to accept surrender of the Real Property in full satisfaction of its Mortgage Claim or even to take possession of the Real Property. Rather, Debtor elected not to oppose Deutsche Bank's Stay Relief Motion and, once granted, took the unnecessary step of modifying his plan to surrender the Real Property.[3] Given the general rule that surrender of all collateral securing a claim fully resolves the allowed secured claim of the lienholder but does not eliminate any unsecured deficiency claim when the collateral is worth less than the underlying debt, *In re McCann*, No. 10BK-10929, at *4 (Bankr. W.D. La. Oct. 16, 2014) (collecting cases), Deutsche Bank's right to a deficiency claim, if any, was unimpeded by Debtor's actions. Hence, the pertinent question for purposes of this Memorandum-Decision and Order is not whether Deutsche Bank must accept surrender of the Real Property but rather whether it's post-foreclosure deficiency claim, if any, survives the Debtor's Discharge Order.

Section 1328 governs discharges in chapter 13 cases. A discharge order in a chapter 13 case discharges "all debts provided for by the plan or disallowed under section 502 of this title" except those debts described in §§ 1328(a) and (d). 11 U.S.C. § 1328(a). "'In determining whether a 'claim' is provided for by the plan, the relevant inquiry is whether the plan 'make[s] a provision for it, i.e. deal[s] with it or refer[s] to it.'" *Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 222 (Bankr. E.D.N.Y. 2011) (quoting *In re Daniel*, 107 B.R. 798, 802–03 (Bankr. N.D. Ga. 1989)). Certain debts are excluded from a full-compliance discharge granted under § 1328(a), including long-term debts provided for under § 1322(b)(5), certain tax debts, other debts enumerated under

---

[3] Pursuant to Local Bankruptcy Rule 3007-1(f), "[a]n entity holding an allowed secured claim that obtains relief from the automatic stay in a chapter 13 case shall not continue to receive the payments provided for in the confirmed plan once the trustee receives the order granting the relief." Pursuant to Local Bankruptcy Rule 3007-1(g), the affected creditor referred to in subsection (f) shall retain the right to file an amended claim. Accordingly, the secured claim is automatically removed from the plan and the secured creditor's right to amend its proof of claim for any unsecured deficiency is preserved. A separate post-confirmation motion to modify is not necessary to effectuate removal of the secured claim from the plan or the trustee's distribution scheme.

specific subsections of § 523, and certain postpetition debts. Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy, ¶ 1328.02[3] (16th ed. 2016).

Section 524 governs the effect of a debtor's discharge in bankruptcy. Section 524(a)(2) provides:

> (a) A discharge in a case under this title–
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2). Where an entity willfully violates the permanent discharge injunction, it may be held in civil contempt. *Kinney v. Gallagher*, 524 B.R. 455, 464 (W.D.N.Y. 2015) (citing *In re Nassoko,* 405 B.R. 515, 520 (S.D.N.Y. 2009); *In re Cruz*, 254 B.R. 801, 816 (S.D.N.Y. 2000)). For a finding of contempt, a movant must show that the violating party knew that the discharge injunction was invoked and intended the actions that violated the discharge injunction. *In re Doger-Marinesco*, No. 09-35544 (CGM), 2016 Bankr. LEXIS 4111, at *41 (Bankr. S.D.N.Y. Dec. 1, 2016) (citing cases). "No evidence of ill will or malice is necessary to prove willfulness." *Id.* at *51 (citing *In re Roush*, 88 B.R. 163, 164–65 (S.D. Ohio 1988)).

It is well-established that an in rem foreclosure proceeding against mortgaged property that does not seek a judgment against a debtor personally after his or her debts have been discharged in bankruptcy does not violate the discharge injunction. *Schmelcher v. Cnty. of Oneida*, No. 6:15-cv-00245 (MAD), 2016 U.S. Dist. LEXIS 7389, at *6 (N.D.N.Y. Jan. 22, 2016) (A discharge injunction "only prevents enforcement of personal liability and does not prevent foreclosure of a lien on property.") (quoting *In re Wiggins*, No. 12-13341, 2013 Bankr. LEXIS 3587, at *2 (Bankr. S.D.N.Y. Aug. 29, 2013)). However, the sending of collection letters by a mortgagee or servicer after receiving notice of a debtor's discharge is a clear violation of the discharge injunction. *In re*

*Doger-Marinesco*, 2016 Bankr. LEXIS 4111, at *26 (citing *In re Szenes*, 515 B.R. 1, 8 (Bankr. E.D.N.Y. 2014)).

In this case, Deutsche Bank contends that (1) its Mortgage Claim was not provided for under Debtor's Amended Plan and (2) even if this argument fails, neither Deutsche Bank nor Bayview willfully violated the discharge injunction by sending monthly Mortgage Statements in compliance with the requirements of RESPA and as permitted by the Confirmation Order. Deutsche Bank's first argument fails for two reasons.

First, Deutsche Bank's successful Stay Relief Motion premised on Debtor's post-confirmation default of his obligation to maintain regular payments pursuant to § 1322(b)(5) removed the Mortgage Claim and the Mortgage Debt as a long-term debt from Debtor's chapter 13 case. Second, although Deutsche Bank is correct that "[i]n New York State, where ownership of real property is a matter of public record, deeds and notice, expression of intent to surrender in a chapter 13 plan cannot be found to be the actual legal procedure for surrender," *Armstrong v. Trustco Bank (In re Armstrong)*, 434 B.R. 120, 130 (Bankr. S.D.N.Y. 2010), pursuant to § 1325(a)(5), one way of providing for a secured claim is to surrender the real property securing such claim to the holder. *Bryant v. BAC Home Loans Servicing, LP (In re Bryant)*, Chapter 13 Case No. 09-81357, 2010 Bankr. LEXIS 1147, at *6 (Bankr. N.D. Ga. Mar. 8, 2010) (citing 11 U.S.C. § 1322(a)(5)); *see also In re Robertson*, 72 B.R. 2, 4 (Bankr. D. Colo. Mar. 29, 1985) (an amended plan may provide for treatment of a secured debt either by way of payment or surrender of the security). Hence, Deutsche Bank's Mortgage Claim was "provided for" by Debtor's Amended Plan. Nonetheless and without supporting authority, Deutsche Bank concludes that Debtor's surrender of the Real Property does not absolve him of personal liability on the Mortgage Debt. Choosing the surrender option and completing a chapter 13 case in fact does just that. By

allowing stay relief and choosing to surrender the Real Property, rather than retain it and treat the Mortgage Debt as a long-term debt subject to § 1322(b)(5), Debtor did not invoke the exception to discharge under § 1328(a)(1). As such, Deutsche Bank's Mortgage Claim is subject to discharge under § 1328(a) and Debtor is no longer personally liable for the Mortgage Debt.

The Court now turns to the dispositive question of whether Bayview willfully violated the discharge injunction by sending Debtor the Mortgage Statements in question. Because § 524(a)(2) prohibits only the commencement or continuation of an action to collect against a debtor personally for a debt that arises in connection with a mortgage lien, *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("a bankruptcy discharge extinguishe[s] only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*"), the Bankruptcy Code is not in conflict with RESPA or other state or federal statutory schemes. A secured creditor can comply with RESPA or other state or federal statutory requirements notwithstanding a debtor's discharge because the discharge injunction does not prohibit every communication between the creditor and a debtor. *Navarro v. Banco Popular de P.R. (In re Navarro)*, 563 B.R. 127, 141 (Bankr. D.P.R. 2017).

The Bankruptcy Code and courts recognize that for debts secured by a mortgage on residential real property, there are valid reasons to communicate information about the debt to the debtor that have nothing to do with attempting to collect it against the debtor personally.[4] "'It is

---

[4] *See, e.g.,* 11 U.S.C. § 524(j) (enacted by Congress in 2005 as part of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005 as an exception to the discharge injunction to facilitate a secured creditor's continued collection of mortgage payments made voluntarily by a debtor in connection with a principal residence in the absence of a reaffirmation agreement). This defense was not plead by Deutsche Bank or Bayview in this case and the Court notes that the precise meaning of this provision has been disputed. *In re Biery*, 543 B.R. 267, 285 (Bankr. E.D. Ky. 2015) (collecting and comparing cases). The Court does not determine here the scope or proper application of § 524(j) because neither Deutsche Bank nor Bayview argued that Bayview's conduct was protected by this statutory provision. Further, Debtor elected post-confirmation to vacate and surrender the Real Property and, at the time Bayview sent Debtor the Mortgage Statements in question, Debtor no longer resided at the Real Property. *See Lemieux v. America's Servicing Co. (In re Lemieux)*, 520 B.R. 361, 368–69 (Bankr. D. Mass. 2014) (citing *In re Nordlund*, 494 B.R. 507, 521 (Bankr. E.D. Ca. 2011)).

not *per se* improper for a secured creditor to contact a debtor to send payment coupons, determine whether payments will be made on a secured debt or inform the debtor of a possible foreclosure or repossession, as long as it is clear that the creditor is not attempting to collect the debt as a personal liability.'" *Id.* (quoting Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[1] (16th ed. 2016)). To this end, many mortgage creditors include a notice in post-bankruptcy communications to debtors that the communications are intended for informational purposes only and are not attempts to collect a debt. *Best v. Nationstar Mortg. LLC (In re Best)*, 540 B.R. 1, 11 (B.A.P. 1st Cir. 2015) ("Statements of an informational nature, even if they include a payoff amount, are generally not actionable if they do not demand payment.") (citing *Brown v. Bank of Am. (In re Brown)*, 481 B.R. 351, 359 (Bankr. W.D. Pa. 2012)). Case law makes clear, however, that such a disclaimer does not immunize a creditor from sanctions if other parts of the communication or other actions seek collection of the debt. *Id.* at 143.

"In determining discharge injunction violations, the crucial issue is whether the creditor acted in such a way to 'coerce' or 'harass' the debtor improperly." *Id.* at 142–43 (citing *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006); *In re Schlichtmann*, 375 B.R. 41, 95 (Bankr. D. Mass. 2007); *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6–7 (B.A.P. 1st Cir. 2009)). An action is considered to be coercive under an objective standard when it is '"tantamount to a threat,"' *id.* at 143 (quoting *Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 401 (1st Cir. 2002)), or "places the debtor 'between a rock and a hard place,'" *id.* (quoting *Diamond v. Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224, 227–28 (1st Cir. 2008)).

Deutsche Bank asserts that Bayview sent the Mortgage Statements to Debtor not as a means of coercing payment for the Mortgage Debt but rather to avoid its exposure to RESPA Truth in Lending violations. *See* 12 C.F.R. § 1026.41 (2017) (exempting servicers from the requirements

of this section for a mortgage loan while the consumer is a debtor in bankruptcy under Title 11 of the United States Code).[5] As stated above, a servicer is not prohibited from complying with RESPA so as long as such communication is strictly for compliance purposes rather than to coerce payment of a discharged debt. Similarly, a mortgagee may comply with the mandatory disclosure requirements set forth in Article 13 of the New York Real Property Actions and Proceedings Law without committing civil contempt in relation to a bankrupt homeowner. *See* N.Y. REAL PROP. ACTS §§ 1303 & 1304 (Consol. 2017).

Examination of Bayview's Mortgage Statements in this case reveals that they do in fact follow the format proscribed by RESPA. This, however, does not save Bayview by automatically ending the Court's inquiry. Rather, the pertinent question is whether Bayview's communications are purely for valid informational purposes to communicate the existence of either the Mortgage Debt or Debtor's continued rights under federal or state law with respect to the Real Property and the enforcement of Deutsche Bank's in rem rights, or instead are an impermissible attempt to collect the discharged Mortgage Debt. As one court observed, "[i]t appears that although this issue has been considered by many courts, 'few clear rules emerge.'" *Bibolotti v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-472, 2013 U.S. Dist. LEXIS 69242, at *22 (E.D. Tex. May 15, 2013) (quoting *In re Mahoney*, 368 B.R. 579, 584 (W.D. Tex. 2007)).

Each of the six Mortgage Statements sent by Bayview to Debtor contains a total amount due, notice of a potential late payment fee, a payment due date, and a payment coupon. All but two of the six Mortgage Statements include the following disclaimer: "To the extent that your obligation has been discharged or is subject to an automatic stay in bankruptcy this notice is for

---

[5] The Court notes that, effective April 19, 2018, this section will permanently exempt servicers from the requirements of this section with regard to a mortgage loan if "[a]ny consumer on the mortgage loan is a debtor in bankruptcy under title 11 of the United States Code or has discharged personal liability for the mortgage loan pursuant to 11 U.S.C. [§§] 727, 1141, 1228, or 1328 . . . ." 12 C.F.R. § 1026.41(e)(5)(A).

information purposes only and does not constitute a demand of payment or any attempt to collect such obligation." The Mortgage Statements have a copyright date of 2011 and, for those that have disclaimer language, the disclaimer is not in a separately titled section but rather appears in a non-titled section in fine print on the second of three pages. The Mortgage Statements dated December 9, 2015, and June 9, 2016, however, are only two pages in length and do not include a disclaimer.[6]

Courts assessing similar facts have reached different conclusions on whether such statements are efforts to collect a debt. As one court noted, their conclusions varied depending upon the content of the statements. *In re Brown*, 481 B.R. at 360. The court in *In re Bruce*, No. 00-50667 C-7, 2000 Bankr. LEXIS 2210 (Bankr. M.D.N.C. Nov. 7, 2000), for example, found that the secured creditor violated the discharge injunction by continuing to send monthly statements to the debtor after it received notice that the debtor vacated the property, obtained relief from the automatic stay to proceed with foreclosure, and received notice of the debtor's discharge. The statements contained a disclaimer but they also included payment coupons showing current payments due and the current due dates. *Id.* at *1–2. Although addressing an alleged violation of the automatic stay, for which the standard is the same, the court in *Schatz v. Chase Home Fin. (In re Schatz)*, 452 B.R. 544 (Bankr. M.D. Pa. 2011), for example, relied upon the presence of a disclaimer and the lack of a past due amount, demand for immediate payment, or threat of consequences for the debtor's failure to act to support its finding that the secured creditor did not violate the automatic stay, *id.* at 550.

The facts now before the Court are analogous to those in *In re Bruce*, 2000 Bankr. LEXIS 2210. In that case, the debtor surrendered and vacated his home and the mortgagee obtained relief

---

[6] None of the Mortgage Statements have page numbering so it is possible that these two Mortgage Statements are incomplete. Deutsche Bank and/or Bayview, however, failed to argue the same or to supplement the record when provided the opportunity. In fact, at oral argument on December 1, 2017, counsel for Deutsche Bank acknowledged that there was a "disclaimer on *some* of the statements that were sent."

from the automatic stay to proceed to foreclosure prior to the debtor's discharge. The mortgagee repeatedly communicated with the debtor post-discharge by sending the debtor written statements indicating that payment was due and telephoning the debtor at his place of employment. The court held the mortgagee in civil contempt because its actions went beyond the state law statutory notice requirements of foreclosure and therefore violated the discharge injunction. *Id.* at *11. Likewise, in this case, Deutsche Bank obtained relief from stay causing Debtor to surrender and vacate the Real Property on notice to Deutsche Bank. Bayview received notice of the Discharge Order directly from the Bankruptcy Noticing Center. Bayview then sent six Mortgage Statements to Debtor over the course of eighteen months. Each of these Mortgage Statements include a payment due date, past due amount, threat of a late charge if payment is not received by a date certain, and delinquency notice that warns of both fees and foreclosure if the loan is not brought current. Only four of the Mortgage Statements include an inconspicuous disclaimer. On these facts, the Court finds that the Mortgage Statements seek payment from Debtor and therefore violate the discharge injunction imposed by § 524(a)(2).

VI.    *Conclusion*

Deutsche Bank has the right to enforce its Mortgage against the Real Property after entry of the Discharge Order, but it has no right to demand payment from Debtor on the discharged Mortgage Debt. Because Debtor surrendered and vacated the Real Property after Deutsch Bank obtained relief from stay, whether the conduct by Deutsche Bank and/or Bayview is permissible or impermissible is easier to discern. Deutsche Bank and Bayview knew or should have known that Debtor was not interested in avoiding foreclosure or obtaining a loan modification.

This is not to say that all communication with debtors is prohibited. This Court recognizes that while dealing with a mortgagee and/or loan servicer after receiving a bankruptcy discharge

may be inconvenient, a debtor still has a relationship with the mortgagee and/or loan servicer until they no longer have an interest in the property that serves as collateral for the mortgage. Notwithstanding a debtor's election to surrender the property, until the mortgagee's in rem rights against the property are exercised and the debtor's ownership interest is extinguished under state law, a debtor must be able to tolerate a small amount of communication from the mortgagee or servicer regarding the property. *Henriquez v. Green Tree Servicing, LLC (In re Henriquez)*, 536 B.R. 341, 350 (Bankr. N.D. Ga. 2015). That communication, however, must not run afoul of the discharge injunction by seeking to collect the discharged debt against the debtor personally. A communication is violative of the discharge injunction only if it overtly demands payment, has the effect of coercing payment, or lacks a valid informational purpose.

Given the facts and circumstances present in this case, Bayview should have more carefully tailored its correspondence to Debtor's actual circumstances and, at a minimum, included a clear and conspicuous disclaimer on each document. Although Deutsche Bank appeared to defend the Motion, Debtor correctly moved against Bayview as the entity that is liable for the discharge injunction violation.[7] Therefore, Debtor's Motion against Bayview is granted. The Court will issue a separate Scheduling Order finding Bayview in contempt and setting an evidentiary hearing on damages.

It is SO ORDERED.

Dated: May 18, 2017
      Utica, New York

/s/Diane Davis_____
DIANE DAVIS
United States Bankruptcy Judge

---

[7] A mortgagee's liability ends once the servicer receives notice itself from any source of the bankruptcy. Past that point, the servicer becomes liable for its own violative conduct. *Thomas v. Seterus Inc. (In re Thomas)*, 554 B.R. 512, 524 (Bankr. M.D. Ala. 2016).